IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

JERRY LEE JORDAN,              )
                              )
            Petitioner,        )
                              )
      v.                       )          CV 118-142
                              )          (Formerly CR 115-086)
UNITED STATES OF AMERICA,       )
                              )
            Respondent.        )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner, an inmate at the Federal Correctional Institution in Edgefield, South Carolina, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.     **BACKGROUND**

       A.     **Information**

On September 16, 2015, the government charged Petitioner and his wife, owners and operators of a used car business named "U Wanna Ride Used Car Sales," in a two-count information. United States v. Jordan, CR 115-086, doc. no. 1 (S.D. Ga. Sept. 16, 2015) (hereinafter "CR 115-086"). Count one alleged Petitioner and his wife, along with others, conspired to commit theft of public money and aggravated identity theft by fraudulently acquiring and negotiating more than eighty tax refund checks made payable to others,

resulting in theft of more than $400,000 of funds belonging to the United States and its agencies.  Id.  Count Two charged Petitioner with a specific count of aggravated identity theft, alleging Petitioner, aided and abetted by others, knowingly transferred, possessed, and used, without authority the means of identification of a person identified as RZ in relation to theft of public money.  Id.

B.    **Agreement to Plead Guilty**

Nearly three months after the information was filed, the Court received plea agreements for both Petitioner and his wife, and summons issued for Petitioner and his wife to appear before Chief United States District Judge J. Randal Hall on January 5, 2016.  CR 115-086, doc. nos. 6, 7.  At that January 5th appearance, Petitioner and his wife, represented by retained counsel Jacque Hawk, waived prosecution by indictment and consented to proceed by information.  Id., doc. nos. 16, 20.  Petitioner pled guilty to Counts One and Two of the information and was released on bond pending sentencing.  Id., doc. nos. 14, 15, 17, 18.

Because Petitioner challenges the denial of his motion to withdraw his guilty plea as to Count Two only, the Court limits its factual recitation to those relevant to the aggravated identity theft charged in that Count.  Petitioner's plea agreement contained the following legal and factual information concerning Count Two:

> The elements necessary to prove the offense charged in Count Two are: (1) the Defendant knowingly transferred, possessed, or used another person's means of identification; (2) without lawful authority; (3) during and in relation to a felony violation of Title 18, United States Code, Section 641.

> Defendant agrees that he is, in fact, guilty of these offenses.  He agrees to the accuracy of the following facts, which satisfy each of the offenses' [sic] required elements:

. . . .

As to Count Two:

That on or about November 16, 2012, in the Southern District of Georgia, the Defendant herein, aided and abetted by others, did knowingly transfer, possess, and use, without lawful authority, the means of identification of another person, that is the name and signature of an individual whose initials are R.Z., during and in relation to the felony violation of Title 18, United States Code, Section 641, specifically, Theft of Public Money, all done in violation of Title 18 United States Code, Section 1028A and 2.

Id., doc. no. 18, (Plea Agreement), pp. 2-4.  With his signature on the plea agreement, Petitioner agreed he read and carefully reviewed it with Mr. Hawk, understood each provision, voluntarily agreed to it, and "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 12.

By signing the plea agreement, Petitioner further agreed to "entirely waive[] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 8.  Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id.  By signing the plea agreement, Petitioner additionally attested Mr. Hawk had "represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 10.  Petitioner would also later testify under oath at the guilty plea hearing he was satisfied with the help he had received from Mr. Hawk.  CR 115-086, doc. no. 72 (Rule 11 Tr.), p. 13.

At the guilty plea hearing held jointly for Petitioner and his wife, Judge Hall started by confirming Petitioner had agreed to plead guilty to conspiracy and aggravated identity

3

theft, and Petitioner's wife had agreed to plead guilty to the conspiracy charge only. Id. at 4. Mr. Hawk initially disagreed with Judge Hall's summary, but after a recess allowing Mr. Hawk to confer with his clients and Assistant United States Attorney (AUSA) Troy Clark, the parties announced to Judge Hall they were ready to proceed as originally announced. Id. at 5.

Judge Hall then proceeded to confirm no one had threatened or pressured Petitioner into pleading guilty. Id. at 6. Judge Hall explained the information alleged a conspiracy in Count One to commit theft of public money and aggravated identity theft, and he reviewed the manner and means of the conspiracy alleged, which included, inter alia, (1) obtaining personal identification information to prepare and file fraudulent tax returns, (2) directing fraudulent tax refunds into accounts controlled by Petitioner and his wife without consent of the named taxpayer, and (3) making cash withdrawals from those accounts for their own benefit, resulting in theft of more than $400,000. Id. at 9-10. Count Two, brought only against Petitioner, alleged that on or about November 16, 2012, Petitioner "knowingly transferred, possessed and use[d] without lawful authority the means and identification of another person . . . . whose initials are RZ during and in relation to the theft of public money" described in the conspiracy allegations in Count One. Id. at 10. Judge Hall further confirmed Petitioner had seen the information, gone over it with Mr. Hawk, and wished to waive his right to be charged in an indictment by the grand jury. Id. at 10-12.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 13-16. Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and

cross-examine witnesses, the right to remain silent, and the right to appeal any adverse result at trial.  Id.  Judge Hall also specifically confirmed Petitioner read the plea agreement, reviewed it with Mr. Hawk, and agreed to be bound by all terms of the agreement, as well as to the accuracy of the facts in the agreement.  Id. at 16-17.  Further, Judge Hall explained Petitioner would be waiving his right to appeal unless the sentence exceeded the statutory maximum penalty or the applicable advisory Guidelines range, or if the government filed an appeal.  Id. at 18.  Judge Hall specifically reviewed Petitioner was "giving up [his] right to collaterally attack [his] conviction and sentence in a post-conviction proceeding with one exception and that waiver does not apply to a claim of ineffective assistance of counsel."  Id.

Judge Hall confirmed that other than the plea agreement, no one on behalf of the government had promised anything to procure the guilty plea.  Id. at 18-19.  Additionally, Judge Hall reviewed the potential for a five-year term of imprisonment for conviction on Count One and a consecutive two-year sentence on Count Two.  Id. at 19.  When asked, Petitioner confirmed that he understood the possible imprisonment penalty, as well as the potential $250,000 fine for each count, as well as a term of supervised release on each count after completion of the term of imprisonment.  Id.

Judge Hall explained the elements the government would have to prove in order to convict Petitioner of Counts One and Two.  Id. at 23.  When Petitioner raised a question about Count Two and the person identified therein as RZ, the AUSA explained Richard Zellers had a check that a previous defendant before the Court took to the car lot owned by Petitioner and his wife; Mr. Zellars's signature was forged on the back of the check, the check was annotated to give the appearance a car had been purchased; and the check was deposited into Petitioner's Queensborough Bank account.  Id. at 25.  The Court also took a

recess so Mr. Hawk could further explain that even though Petitioner had not physically handled Mr. Zellars's check, because others involved in the same conspiracy in which Petitioner participated had taken such actions with respect to the check without the owner's permission, knowledge, or consent and the check ended up in Petitioner's account, Petitioner had been charged with aggravated identity theft with respect to that check.  Id. at 25-27.

Judge Hall further explained that upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report (PSI), and Petitioner's sentence would be based on the information in the PSI.  Id. at 20-21.  Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range.  Id. at 21-22.  Petitioner stated that he understood the sentencing process described by Judge Hall and that no one had promised him he would receive a particular sentence.  Id. at 22-23.

Judge Hall heard a factual basis for the guilty plea from Special Agent Roger Garland with the Internal Revenue Service.  Id. at 27-33.  SA Garland testified he was lead IRS investigator for the case against Petitioner, which started when a bank provided a lead regarding the business account for U Wanna Ride Used Car Service, the business owned by Petitioner and his wife.  Id. at 28-29.  He discovered an unusually large amount of refund checks going into the business account, and when the payees of those checks were interviewed, they had no idea a tax return had been filed in their name, let alone a refund check deposited in the U Wanna Ride bank account.  Id. at 29. SA Garland also explained he reviewed approximately eighty checks totaling over $400,000 that were deposited into the U Wanna Ride business bank account at Regions Bank.  Id. at 30-31.

Having reviewed the Regions Bank business account, and two other personal accounts at USAA Bank and Queensborough Bank that received tax refunds as part of a Christmas loan scheme run by Petitioner and his wife, SA Garland calculated the total amount involved in the crimes to be $507,598.22. Id. at 30-31. SA Garland testified that as part of the conspiracy, Petitioner and his wife charged approximately fifty-percent to cash any type of check without identification, and those third-party checks - none of which were made out to Petitioner or his wife - were deposited into the U Wanna Ride bank account. Id. at 32. Concerning the aggravated identity theft charge in Count Two, SA Garland interviewed Richard Zellars, but he had no idea a tax refund had been issued in his name, let alone deposited into the U Wanna Ride account. Id. at 32-33. After hearing SA Garland's testimony, Petitioner admitted the conduct described and confirmed his desire to plead guilty to Counts One and Two of the information. Id. at 33-34.

Judge Hall then summarized the proceedings as follows:

> With the entry of the pleas into the record of this proceeding, I make the following findings:  I find each Defendant has waived his or her right to indictment and has agreed to proceed by Information only.  In addition, each Defendant has consented to proceed with this guilty plea hearing.
>
> Each defendant is competent.  He or she fully understands the charges against him or her.  There is an independent factual basis for each - - each Defendant's plea of guilty containing the essential elements of the appropriate offense or offenses.  Each Defendant knows the statutory punishment that could be imposed on the charges and each knows their jury rights which they have knowingly and voluntarily waived.
>
> I further find that each Defendant's decision to plead guilty this morning was voluntary, knowing, and not the result of any force, pressure, threats, or promises other than the promises made by the Government in the Plea Agreement.
>
> Therefore, I find that Defendant Jerry Lee Jordan should be adjudged guilty of Counts One and Two of the Information . . . .

Id. at 34-35.  Judge Hall allowed Petitioner to remain on bond pending sentencing.  Id. at 40.

### C.     Motion to Withdraw Guilty Plea

Approximately two months after entry of the guilty plea, Mr. Hawk requested and received an extension of time to file objections to the PSI.  CR 115-086, doc. nos. 25, 26. Sentencing was set for May 19, 2016, and then reset for June 1, 2016.  Id., doc. no. 28 and doc. entry dated Apr. 18, 2016.  On June 1, 2016, Judge Hall held an *ex parte* hearing at which Mr. Hawk made an oral motion to withdraw from representing Petitioner.[1]  Judge Hall granted the motion and provided Petitioner thirty days to retain new counsel, move for appointed counsel, or decide to proceed *pro se*, and reset sentencing for July 7, 2016.  Id., doc. no. 31.  Upon request of Petitioner, the Court appointed attorney Jon E. Ingram, Jr., under the Criminal Justice Act to represent Petitioner, and the Court reset sentencing for August 2, 2016.  Id., doc. nos. 34, 35, 37, 38.  Pursuant to the government's request, the Court moved Petitioner's sentencing to August 22, 2016.  Id., doc. nos. 43, 46.

Less than one week before sentencing, Petitioner filed a motion to withdraw his guilty plea to Count Two, arguing his medical condition on the date alleged in Count Two, as well as his lack of signatory authority on the business account into which the check at issue was deposited, showed he should be allowed to withdraw his plea to aggravated identity theft. Id., doc. no. 47.  Judge Hall held a hearing on the motion, at which Mr. Ingram argued Petitioner should be allowed to withdraw his plea to Count Two because he was in the hospital just days before the November 16, 2012 events alleged, had no signatory authority on the business account into which the RZ check had been deposited, and was confused

---

[1]The sentencing for Petitioner's wife proceeded as scheduled, with Mr. Hawk appearing as counsel, on June 1, 2016.  CR 115-086, doc. nos. 32, 33.

about the counts to which he would be pleading on the day he arrived for the change of plea proceedings.  Id., doc. no. 71 (Mot. Hr'g Tr.), pp. 6-9.

The government countered the plea agreement was the result of extended negotiations with Petitioner and counsel and was signed more than a month before the change of plea proceedings, showing Petitioner had at least five weeks of knowledge about the final terms of the plea negotiations.  Id. at 9-10.  As the AUSA summarized:

> [Petitioner] is, basically, arguing factual innocence of things that took place years before he entered into the Plea Agreement.  It's not like he signed the Plea Agreement, went through the change of plea hearing, and had the epiphany that he had a surgery many years ago.  He knew about that from the time he was on the hospital bed all the way through the time of signing the Plea Agreement and affirming under oath to this Court that he knew what he was doing and that he was pleading guilty because he was, in fact, guilty.

Id. at 10.

At the conclusion of the hearing, Judge Hall denied the motion, concluding Petitioner had close assistance of counsel when he knowingly and voluntarily entered his guilty plea, judicial resources would not be conserved by permitting the withdrawal, and the government would be prejudiced by having to reconvene and expend additional resources to try the case. Id. at 13-14.  Judge Hall also specifically identified the delay in seeking to withdraw the guilty plea, noting the motion did not come until after the initial PSI, with its Guidelines calculation for a sentence, was issued, suggesting Petitioner did not make an error in entering his guilty plea but made a strategic decision to attempt withdrawal after seeing the recommended sentence in the PSI.  Id. at 14-15.

### D.    Sentencing

While Petitioner changed counsel and pursued withdrawing his guilty plea, and in accordance with Judge Hall's instructions at the end of the Rule 11 proceeding, the United

States Probation Office prepared a PSI which set Petitioner's Total Offense Level at twenty-two, Criminal History Category at I, and Guidelines imprisonment range at forty-one to fifty-one months on Count One, and two years on Count Two to be served consecutively to any sentence imposed for Count One. PSI ¶¶ 31, 32, 79. Because the loss amount exceeded $250,000 but was less than $550,000, the offense involved ten or more victims, and Petitioner was manager or supervisor of the conspiracy in Count One, the base offense level of six was increased by twelve, two, and two points, respectively. PSI ¶¶ 23-26. Petitioner did not receive a reduction for acceptance of responsibility, as he told the probation officer, "I didn't do anything wrong and only pled guilty because my attorney told me to" and, as described above, attempted to withdraw his guilty plea to Count Two. PSI ¶¶ 20, 30; PSI Add. The statutory maximum term of imprisonment for Count One was five years, and two years consecutive to any other sentence for Count Two. CR 115-086, doc. no. 4; PSI ¶ 78.

The government did not file any objections to the PSI, and Petitioner filed eleven objections. See PSI Add.; CR 115-086, doc. no. 73, (Sent. Tr.), pp. 3-4. Judge Hall observed the bulk of Petitioner's objections were based on Petitioner's assertion he was not guilty of Count Two, contrary to his guilty plea. Thus, Judge Hall overruled those objections and turned to the remaining objections related to the two-point enhancement under U.S.S.G. § 3B1.1(c) based on Petitioner's role as a manager or supervisor in the conspiracy, (PSI ¶ 26), and the denial of a reduction for acceptance of responsibility, (PSI ¶ 30). Sent. Tr. 6, 12.

As to the objection regarding Petitioner's role as a manager or supervisor, defense counsel argued Petitioner's medical condition prevented him from being at the U Wanna Ride business during the relevant time period and because the checks were deposited in a bank account over which Petitioner had no signatory authority, the enhancement was not

appropriate.  Id. at 6-7, 9-11.  Judge Hall overruled the objection, finding that regardless of the individual's name on the bank account, it was a business account for the car lot owned, according to the uncontested facts in paragraph six of the PSI,[2] by both Petitioner and his wife.  Id. at 11.

> Who owned that account, who may have had signatory authority really is not relevant to the finding on whether or not [Petitioner] was an organizer or leader.  The facts are by preponderance of the evidence the PSR facts suggest that [Petitioner] directed the activities of George Jordan and Thomas Green as to the cashing of fraudulent income tax checks and those two gentlemen were deemed participants under Application Notes 3B1.1, and therefore the Court's finding is that . . . [Petitioner] in this case, was an organizer, leader, manager, or supervisor . . . .

Id. at 12.

As to the acceptance of responsibility objection, Judge Hall rejected Petitioner's attempt to separate Count One from Count Two.  As Judge Hall explained, simply pleading guilty does not automatically entitle a defendant to an adjustment for acceptance of responsibility, and the law in the Eleventh Circuit is that a defendant must accept responsibility for all counts of conviction and the failure to do so is a sufficient basis for denying the reduction.  Id. at 17; United States v. Thomas, 242 F.3d 1028, 1034 (11th Cir. 2001).

Thus, Judge Hall adopted the factual statements in the PSI, as well as the conclusions contained therein regarding the Guidelines calculations, and determined the advisory Guidelines range was forty-one to fifty-one months imprisonment on Count One and twenty-four months consecutive on Count Two.  Id. at 17-18.  Prior to Judge Hall announcing the sentence, defense counsel argued in mitigation about Petitioner's poor health, role as

---

[2]At sentencing, facts not objected to in the PSI are deemed admitted.  See United States v. Bennett, 472 F.3d 825, 833-34 (11th Cir. 2006).

provider for his two young children, assistance to the government bringing cases against others, a non-violent history, and the hardship of the required consecutive sentence for Count Two.  Id. at 19-23.  When asked, Petitioner had nothing to say for himself.  Id. at 23.  Judge Hall imposed a term of imprisonment of seventy-five months, comprised of fifty-one months on Count One and a consecutive term of twenty-four months on Count Two.  Id. at 30.

### E.   Direct Appeal

Despite the appeal waiver in the plea agreement, Petitioner appealed the Court's denial of the motion to withdraw his guilty plea and the sentence imposed.  CR 115-086, doc. no. 57.  The Eleventh Circuit affirmed, concluding Judge Hall did not err in denying the motion to withdraw and the guilty plea was entered knowingly and voluntarily.  United States v. Jordan, 693 F. App'x 864, 865 (11th Cir. 2017) (per curiam).  The appellate court also rejected Petitioner's challenge to his sentence, concluding that claim was barred by his valid appeal waiver.  Id. at 866 & n.1.

### F.   § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims:

(1)   The Court erred in denying Petitioner's motion to withdraw his guilty plea to the aggravated identity theft charged in Count Two.

(2)   The Court erred in applying a two-point enhancement under U.S.S.G. § 3B1.1(c) for Petitioner's alleged role as an organizer, leader, manager, or supervisor.

(3)   Counsel provided ineffective assistance by:

(a) failing to respond to questions about the PSI;

(b) failing to take action on alleged derogatory statements by the AUSA prosecuting Petitioner's case;

(c) failing to challenge witness statements in the PSI or pursue exculpatory statements from other individuals who asserted Petitioner did not direct them to take any specific actions with respect to cashing checks;

(d) misadvising Petitioner about his sentence exposure; and

(e) failing to pursue non-specific appeal issues.

(See generally doc. no. 1 & App. A thereto.)

## II.   DISCUSSION

### A.   No Evidentiary Hearing Required

Petitioner asks for an evidentiary hearing.  (Doc. no. 13, p. 14.)  Section 2255 does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).

Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).  While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised.  Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730

F.2d 707, 708 (11th Cir. 1984).  Because Petitioner's claims lack merit as a matter of law, or

are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

> **B.     Petitioner's Claims in Grounds One and Two Are Barred by the Valid Collateral Attack Waiver in the Plea Agreement and Because the Eleventh Circuit Court of Appeals Previously Considered and Rejected Them**

In Ground One, Petitioner argues the Court erred in denying the motion to withdraw

Petitioner's guilty plea to the aggravated identity theft charge in Count Two.   In Ground

Two, Petitioner contends the Court erred in applying a two-point enhancement under

U.S.S.G. § 3B1.1(c) for Petitioner's role as an organizer, leader, manager or supervisor.

Petitioner maintains his poor health and lack of signatory authority over the business account

into which the check at issue in Count Two was deposited shows he is entitled to relief.  The

record reflects Judge Hall explained at length signatory authority on the bank account was

not dispositive because the account was for the business undisputedly owned jointly by

Petitioner and his wife.  Sent. Tr. 10-11; PSI ¶ 6.  Judge Hall also explained that under the

Application Notes for U.S.S.G. § 3B1.1(c), Petitioner's physical proximity was not required

to apply the sentencing enhancement so long as the preponderance of the evidence showed

Petitioner managed or supervised the activities of a person criminally responsible for the

commission of the offense, here, George Jordan and Thomas Green.  Sent. Tr. 7-12.  In any

event, Grounds One and Two are barred in these § 2255 proceedings.

> **1.     Valid Collateral Attack Waiver**

It is well settled that waiver of the right to attack a sentence and conviction on direct

appeal or by habeas petition is enforceable if the waiver is knowing and voluntary.  United

States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (*per curiam*); United

States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1364-67 (N.D. Ga. 2004) (applying case law on waiver of direct appeal to waiver of collateral attack by § 2255 motion).  "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333.  If the government meets this burden, then the waiver is valid and enforceable.  See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1446-47 (11th Cir. 1997).

Here, the plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to a direct appeal of the conviction and sentence, as well as his right to collaterally attack the same on any ground other than ineffective assistance of counsel.  Plea Agreement, p. 8.  None of the exceptions to the waiver apply because Petitioner's sentence did not exceed the statutory maximum of seven years total imprisonment or the advisory Guidelines range as determined by Judge Hall after reviewing the PSI, and the government did not appeal.  Id.  Moreover, Judge Hall reviewed the appeal and collateral attack waiver provision in the plea agreement during the change of plea proceedings and confirmed Petitioner understood and had agreed to the terms described.  Rule 11 Tr. 18.

While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The record before the Court demonstrates Petitioner's agreement to the collateral attack waiver was knowing and voluntary. Therefore, enforcement of this valid collateral attack waiver bars Petitioner's claims in Grounds One and Two. See United States v. Martin, 549 F. App'x 888, 889-90 (11th Cir. 2013) (per curiam) (refusing to consider claims of PSI errors based on knowing and voluntary sentence appeal waiver); Carstarphen v. United States, Civ. Action No. 07-0417-KD, 2008 WL 4369010, at *2-3 (S.D. Ala. Sept. 25, 2008) (barring review of claims of prosecutorial misconduct in § 2255 proceeding based on valid collateral attack waiver); Brown v. United States, 256 F. App'x 258, 262 (11th Cir. 2007) (per curiam) (refusing to consider merits of sentencing argument in § 2255 proceeding based on valid sentence-appeal waiver provision in plea agreement).

Pretermitting any argument the guilty plea itself was not knowing and voluntary, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows: "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the

constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Judge Hall reviewed the two charges brought against Petitioner in the information - specifically informing Petitioner in clear terms of both charges to which he was pleading guilty and allowing defense counsel additional time to resolve any initial confusion about the aggravated identity theft charge - and reviewed the elements of the offenses the government would have to prove to obtain a conviction. Rule 11 Tr. 4-5, 9-10, 23-27. Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 13-16. Petitioner testified that other than the promises the government made in the plea agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement. Id. at 6, 18-19. Additionally,

Judge Hall informed Petitioner of the possible penalties he faced upon conviction, to include up to five years imprisonment on Count One, and a consecutive two-year sentence on Count Two.  Id. at 19.   Finally, Petitioner also testified he was satisfied with the help he had received from Mr. Hawk.  Id. at 13; see also Plea Agreement, p. 10 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney."); p. 12 ("I have read and carefully reviewed this agreement with my attorney.").

Thus, this Court concludes, as did Judge Hall at the motion to withdraw hearing and as did the Eleventh Circuit on appeal, the thorough plea colloquy ensured that Petitioner understood both the nature of the charges and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty.  See Moriarty, 429 F.3d at 1019.   Thus, Petitioner's collateral attack waiver, agreed to as part of his knowing and voluntary guilty plea, bars his claims in Grounds One and Two.

### 2.    Raised and Rejected on Direct Appeal

Even if they were not barred by the collateral attack waiver, Grounds One and Two are barred because they were raised and rejected on direct appeal.   "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum."  United States v. Frady, 456 U.S. 152, 164 (1982).  Consequently, "[o]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255."  Stoufflet v. United States, 757 F.3d 1236, 1239 (11th Cir. 2014) (citation omitted); see also United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (same); White v. United States, 371 F.3d 900,

902 (7th Cir. 2004) ("[W]e do not see how a federal prisoner--who must file his motion for relief under 2255 in the very court that convicted him--can be allowed to do so if all he is doing is rehashing a claim that had been rejected on the direct appeal.").

Nor will the Court reconsider a previously raised claim where it is merely a re-characterization of an issue raised on direct appeal. Nyhuis, 211 F.3d at 1343. In sum, to obtain review in this § 2255 proceeding of a previously raised claim, not only would Petitioner have to show the collateral attack waiver in the plea agreement does not apply, but Petitioner must also show an intervening change in law since his appeal was decided and that a "complete miscarriage of justice" would occur if the claim is not considered in these proceedings. Davis v. United States, 417 U.S. 333, 346-47 (1974).

Here, Petitioner argued on direct appeal the district court improperly (1) denied the motion to withdraw, and (2) applied the two-level enhancement under U.S.S.G. § 3B1.1(c) for Petitioner's role as an organizer, leader, manager, or supervisor. Jordan, 693 F. App'x at 865, 866 & n.1. The Eleventh Circuit rejected the claims either on the merits or as barred by the appeal waiver. Petitioner does not argue any intervening change in the law, let alone a retroactive change in the law that would render appellate consideration of Petitioner's claims incorrect as a matter of constitutional law or a complete miscarriage of justice. See Stoufflet, 757 F.3d at 1242. He simply rehashes the arguments already rejected on direct appeal, an approach which does not entitle Petitioner to relief. See Nyhuis, 211 F.3d at 1343 ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal."). Therefore, Grounds One and Two are barred in these § 2255 proceedings.

### C.   Petitioner Does Not Satisfy the Heavy Burden Under <u>Strickland v. Washington</u> To Establish Ineffective Assistance of Counsel as to Any Issue Raised in Ground Three

Petitioner's five ineffective assistance of counsel claims raised in Ground Three are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003); <u>United States v. Armstrong</u>, 546 F. App'x 936, 940 (11th Cir. 2013) (*per curiam*).   Under the first prong, Petitioner must show "counsel's representation fell below an objective standard of reasonableness."   <u>Strickland</u>, 466 U.S. at 688.   In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001).   The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . .   But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"   <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).

Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses.   <u>Id.</u> at 1317.   Counsel is not required to "pursue every path until it bears fruit or until all available hope withers."   <u>Puiatti v. Sec'y, Fla. Dep't of Corr.</u>, 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting <u>Foster v. Dugger</u>, 823 F.2d 402, 405 (11th Cir. 1987)).   Strategic decisions are entitled to a "heavy measure of deference."   <u>Strickland</u>, 466 U.S. at 691.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."   <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).   "The test has nothing to do

with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).  The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time."  Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal

quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different."  Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

Moreover, in the context of a guilty plea, in addition to showing counsel's representation fell below an objective standard of reasonableness, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012).  In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas."  Hill, 474 U.S. at 58.

### 1.    Questions About the PSI

Petitioner maintains he was not interviewed for the PSI by anyone with the United States Probation Office, and when he received a copy of the PSI and raised questions to counsel, he received no response.  (Doc. no. 1, App. A, p. 1.)  Notably, Petitioner does not identify whether he is claiming Mr. Hawk or Mr. Ingram did not answer his questions, but in his reply, Petitioner suggests his claims are raised against Mr. Hawk.  (Doc. no. 13, p. 13.)  As discussed above, Petitioner obtained new counsel after issuance of the original PSI and sentencing.  Thus, Petitioner had the opportunity to address with Mr. Ingram any questions Mr. Hawk allegedly did not address.  In any event, the allegations are belied by the record and form no basis for relief.

The PSI confirms Petitioner was interviewed by, and made statements to, the probation officer.  See, e.g., PSI ¶¶ 20, 67-69.  Likewise, Judge Hall confirmed at sentencing

Petitioner and Mr. Ingram had read and discussed the PSI, and in fact, had filed multiple objections. Sent. Tr. 4; PSI Add. (including comments from counsel about advising client on objections and listing eleven objections). Judge Hall gave Petitioner an opportunity to speak at sentencing, but he had nothing to say for himself. Sent. Tr. 23. Petitioner's allegations are belied by the record, do not show deficient performance, and form no basis for relief. See Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (*per curiam*) ("Conclusory allegations of ineffective assistance are insufficient."); Oliver v. Wainwright, 795 F.2d 1524, 1531 (11th Cir. 1986) (*per curiam*) (claiming counsel "failed to investigate facts merely states the general principles of law on the subject without making specific reference to any deficiency" fails to state any constitutional claim); Parks v. United States, No. 1:11cv3841 / 1:06cr0076, 2012 WL 5334135, at *6 (N.D. Ga. Oct. 1, 2012) (explaining general assertions of ineffective assistance will not suffice), *adopted by*, 2012 WL 5332353 (N.D. Ga. Oct. 26, 2012).

## 2.    Alleged Statements by the AUSA

Petitioner claims the AUSA made threatening statements about keeping Petitioner "DOWN THE ROAD A LONG TIME" and having Petitioner's wife testify against him, but his attorney (presumably Mr. Hawk pre-plea) did nothing about it. (Doc. no. 1, App. A, p. 1.) These allegations, too, are conclusory and find no support in the record. At the change of plea proceedings, under oath, Petitioner confirmed to Judge Hall no one had threated or pressured Petitioner into pleading guilty. Rule 11 Tr. 6. "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes

statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").

Moreover, even if the record supported Petitioner's belated contentions, he can show no prejudice because the Eleventh Circuit and this Court have determined Petitioner knowingly and voluntarily pleaded guilty to both Counts of the information. See Jordan, 693 F. App'x at 865; Mot. Hr'g Tr. 12-14. "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained" when the claim is not about the decision to plead guilty. Wilson, 962 F.2d at 997. This claim forms no basis for relief.

### 3.    Failing to Challenge Witness Statements in PSI or Pursue Exculpatory Statements

In yet another attempt to bootstrap a challenge to his guilty plea to Count Two, Petitioner claims two witnesses quoted in the PSI (BS & CH) did not make the statements attributed to them, but counsel did nothing about the issue when Petitioner alerted him to the problem. (Doc. no. 1, p. 1, App. A, p. 1.) Petitioner does not identify the witnesses by name, but there are references to Brian Stone and Carolyn Hannah in the PSI as having either not received an IRS refund due after Petitioner and his wife filed a tax return, or not given permission to prepare a tax return.[3] PSI ¶¶ 13, 14, 16. Petitioner provides nothing other than his self-serving declaration to support this assertion. Moreover, in light of his knowing and voluntary guilty pleas, Petitioner has shown no prejudice even if he had informed counsel

---

[3]The PSI also noted it was unclear if Mr. Stone was legitimately entitled to any IRS refund and did not include any restitution to him. PSI ¶ 14.

that two, out of numerous, witnesses named in the PSI did not make the statements attributed to them.

Petitioner also claims the Manager and Assistant Manager (TG and GJ) of the used car business he and his wife owned and used to facilitate the conspiracy to which they pled guilty wrote statements to Petitioner's attorney explaining (1) they processed twenty to twenty-five checks per month ranging in value from $10,000 to $25,000 per month; and (2) asserting Petitioner and his wife were not involved in these check-cashing activities.  Either Mr. Hawk or Mr. Ingram are alleged to have done nothing with the information.  The claim is contradicted by the record.

In objection number four to the PSI, Petitioner objected that George Jordan, Petitioner's brother, and Thomas Green, Uwanna Ride manager, wrote a letter to Mr. Hawk explaining they deposited thirty-five to forty checks each, ranging from $5,000 to $9,000, and also deposited checks for another used car lot.  See PSI Add.  Not only has Petitioner now changed the type and amount of checks these two individuals were apparently cashing without any direction from Petitioner and his wife, but there is nothing to support this belated, self-serving allegation.  Petitioner did attach an affidavit from his brother George attesting he never made any statement to the government that Petitioner gave him permission to do anything.  (Doc. no. 1, App. B.)  Of course, that is far from the exculpatory statement Petitioner suggests, particularly in light of the guilty plea.

Moreover, as Judge Hall explained at sentencing, Petitioner's objections related to his assertion he was not guilty of Count Two were non-starters based on entry of the guilty plea, and the witness statements about which he complained in the objections - and now in these § 2255 proceedings - are irrelevant.  Sent. Tr. 4-6.  To the extent Petitioner intends any of his

current, unsubstantiated allegations about exculpatory witness statements to apply to his Count One conspiracy conviction, those, too, are barred by his knowing and voluntary guilty plea.  In any event, Petitioner has not shown deficient performance or prejudice since Judge Hall addressed, but rejected, his claims about "exculpatory" witness statements.  Petitioner cannot satisfy the two-pronged Strickland test, and this ground forms no basis for relief.

### 4.   Sentencing Exposure

Petitioner also complains he received ineffective assistance because his attorney "guaranteed" he would receive a two-point reduction for his cooperation and would not receive a sentence longer than four years.  (Doc. no. 1, App. A, p. 2.)  This claim, too, is belied by the record.

First, at the change of plea hearing, Judge Hall asked Petitioner, who was under oath, whether anyone had promised or predicted a specific sentence.  Rule 11 Tr. 22.  Mr. Hawk further clarified, "Has anybody told you you're going to get 'x' number of years, 'x' number of sentence, exactly what your sentence is going to be, anything like that?"  Id.  Petitioner responded, "No, sir."  Id. at 23.  Petitioner will not now be heard to contradict his prior sworn testimony to Judge Hall.  See Blackledge, 431 U.S. at 74; Rogers, 848 F.2d at 168; Stitzer, 785 F.2d at 1514 n.4.

Second, so long as the Rule 11 court correctly advises a defendant of the minimum and maximum penalties he faces as a result of pleading guilty, a petitioner fails to establish prejudice by alleging counsel gave erroneous advice about the sentence he might receive or the possibility for enhancements under the Guidelines.  See United States v. Wilson, 245 F. App'x 10, 11-12 (11th Cir. 2007) (per curiam) (no prejudice where counsel's deficient advice about possible sentencing implications was "cured" by district court, which explained

"the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea"); see also United States v. Herrington, 350 F. App'x 363, 369 (11th Cir. 2009) (per curiam) (affirming district court refusal to allow withdrawal of guilty plea where court at plea hearing set forth maximum penalties and explained court not bound by counsel's sentencing estimates).   The record confirms Judge Hall informed Petitioner of the potential for a five-year term of imprisonment for conviction on Count One and a consecutive two-year sentence on Count Two.  Rule 11 Tr. 19.

Petitioner cannot satisfy the two-prongs of Strickland, and this claim forms no basis for relief.

### 5.        Performance of Appellate Counsel

The Strickland test also applies to claims of ineffective assistance of appellate counsel, see Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), with the additional consideration that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983).  The Court's analysis is further guided by the principle that appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit.  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000); see also United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (rejecting ineffective assistance argument because "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").  Nor does the Sixth Amendment require appellate advocates to raise every non-frivolous issue. Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).  Prejudice turns on whether "the neglected claim would have a reasonable probability of success on appeal."  Id. at 1265.

In the affidavit attached to the original § 2255 motion, Petitioner's closing paragraph states, "The above was mentioned to the appeal attorney that was appointed by the court and again that attorney did nothing with any of this evidence provided."  (Doc. no. 1, App. A, p. 2.)  As set forth above, conclusory allegations of ineffective assistance cannot form a basis for relief.  Wilson, 962 F.2d at 998; Oliver, 795 F.2d at 1531; Parks, 2012 WL 5334135, at *6.  In his reply, however, Petitioner states he "argued that attorney Hawk did nothing with any of the evidence provided and which has nothing to do with the Appellate motion filed with the Appeal Court on 27th day of December 2016."  (Doc. no. 13, p. 13.)  Thus, it is not entirely clear Petitioner even intended to raise an ineffective assistance of appellate counsel claim against Mr. Ingram.

To the extent Petitioner may have been attempting to raise such a claim against Mr. Ingram, he has not identified any viable claim that Mr. Ingram could have, but did not, raise. On appeal, Mr. Ingram challenged denial of the motion to withdraw Petitioner's guilty plea on Count Two and the sentence imposed.  Jordan, 693 F. App'x at 865, 866 n.1.  The Eleventh Circuit rejected the first argument on the merits and concluded the plea was knowingly and voluntarily entered.  Id. at 865.  The appellate court also concluded the appeal waiver in the plea agreement was knowingly and voluntarily entered, thus barring any claims challenging the sentence imposed.  Id. at 866 n.1.

Therefore, even if he had intended to raise an ineffective assistance of appellate counsel claim, Petitioner has not identified any other issue available to raise in light of the valid guilty plea and appeal waiver.  See Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam) (recognizing appeal waiver in plea agreement precludes direct appeal of both sentence and conviction but allows challenge to validity of guilty plea).  Failing to

28

raise an issue on appeal reasonably considered to be without merit does not establish ineffective assistance.  See <u>Nyhuis</u>, 211 F.3d at 1344; <u>see also</u> <u>Winfield</u>, 960 F.2d at 974. Thus, even if Petitioner intended to raise an ineffective assistance of appellate counsel claim against Mr. Ingram, it affords him no relief.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 5th day of August, 2019, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA