IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CR 115-086 |
| | * | |
| JERRY LEE JORDAN | * | |

O R D E R

On January 8, 2021, the Court determined that Defendant Jerry Lee Jordan had established that his medical condition places him at an increased risk of serious medical complications should he contract COVID-19. (Doc. 123.) In particular, Jordan has Stage IV kidney disease and is on dialysis several days a week. He also suffers from diabetes, obesity, hypertension, glaucoma (he is blind in one eye), and heart issues. (See id. at 1.) The Court, however, was unconvinced that Jordan's release was warranted upon consideration of the 18 U.S.C. §3553(a) factors. The Court had also not considered whether Jordan was a danger to the safety of the community, as required pursuant to U.S.S.G. § 1B1.13. The Court, therefore, requested additional information about a disciplinary infraction in May/June 2020[1] and for a verifiable release plan. (Id. at 3.)

---

[1] The disciplinary infraction occurred on May 7, 2020, and the charge was upheld following a disciplinary hearing in June 2020.

Both defense counsel and the Government have filed supplemental briefs in response to the Court's Order. Importantly, the Court has now consulted with the United States Probation Office and has reviewed the entirety of the record in this case to include the Presentence Investigation Report.

Now that the Court has a more complete record, the following facts are relevant to the Court's consideration of Jordan's immediate release. Jordan first appeared in the federal court in 1993 when he was indicted for conspiracy to commit fraud of the food stamp program, several counts of fraud of the food stamp program, conspiracy to possess cocaine with the intent to distribute, and possession of cocaine with intent to distribute. United States v. Jordan, Crim. Case No. 1:93-CR-051 (S.D. Ga. Jul. 7, 1993). Ultimately, he was sentenced to probation on the conspiracy to commit fraud charge. His probation was revoked, however, in November of 1995 because, *inter alia*, he failed to notify his probation officer of new arrests and committed the new offenses of writing bad checks.

On September 16, 2015, the Government filed a two-count information in this case charging Jordan and his wife, Cushena N.L. Jordan, with conspiracy to commit theft of public money and aggravated identity theft, a violation of 18 U.S.C. § 371, and

---

(See generally Gov't Supp. to Resp. in Opp'n to Mot. for Compassionate Release, Doc. 125, Exs. A & B.)

aggravated identity theft, a violation of 18 U.S.C. § 1028A.  For better than two years, Jordan and his wife had been filing fraudulent tax returns using the personal identification information they had obtained through Jordan's used car business.  The total loss amount in the case was determined to be over $500,000.

On August 30, 2016, Jordan was sentenced to serve a total term of 75 months in prison followed by three years of supervised release.  (Doc. 53.)  Jordan was denied an adjustment for acceptance of responsibility because despite his guilty plea, he refused to acknowledge that he did anything wrong.[2]  Moreover, while it was determined that Jordan's criminal history category was I, his arrest record paints a different picture.  (See generally Presentence Investigation Report of June 8, 2016.) Jordan was arrested several times prior to his first federal conviction for carrying a concealed weapon, murder, aggravated assault, simple battery, contributing to the delinquency of a minor, and theft by receiving stolen property.  On three separate occasions, he was arrested for terroristic threats and acts.  While it is true that all of these charges were dismissed at some point, they tend to reveal Jordan as hot-tempered and impulsive.  After Jordan served his 6-month term upon the aforementioned probation

---

[2] In fact, Jordan tried to withdraw his guilty plea on Count II prior to the sentencing.  (Doc. 47.)

3

revocation, he was arrested for possession of a controlled substance, possession of a firearm by a convicted felon (twice), theft by taking (twice), burglary, criminal damage to property in the first degree, and discharge of a firearm on the property of another. In 2002, at the age of 35 when youthful "indiscretions" should be a thing of the distant past, he was arrested in Jefferson County, Georgia for pointing or aiming a gun at another. At the age of 36, he was arrested for simple assault. Again, Jordan was never indicted or convicted of these crimes, but the sheer number of arrests gives the Court great pause. Finally, upon entering his 40s, Jordan settled down with his wife into their scheme of fraud and deceit.

It appears, however, that Jordan's hot temper and guile have not been abated by the prison system. In May 2020, while Jordan was in the same state of compromised health, he was found to have fashioned a weapon with a lock tied to a belt. Jordan would deny the charge, claiming to only have been trying to open the lock. After a hearing, the Bureau of Prisons ("BOP") determined that Jordan was not credible, and sanctions were levied against him. (See generally Gov't Supp. to Resp. in Opp'n to Mot. for Compassionate Release, Doc. 125, Exs. A & B.) Quite recently, on January 11, 2021, Jordan was cited for bypassing the prison's email monitoring system by using a loop back email address to avoid detection. (See id., Ex. C.)

4

In addition to these troubling incidents over the last year, the Court notes that in the BOP's Summary Reentry Plan[3] there is a note that Jordan has refused to make payments toward his court-ordered restitution. (See id., Ex. D, at 3.) Significantly, the Summary Reentry Plan also indicates that Jordan has recovered from a bout with COVID-19 on December 7, 2020 (id. at 2), which is after the Government submitted his inmate medical records. Accordingly, the BOP appears to have adequately addressed any health concerns Jordan had about COVID-19.

In any event, upon reviewing Jordan's history in its entirety, the Court cannot conclude that he is not a danger to the community as required. Moreover, the nature and characteristics of this Defendant, as revealed by his criminal history and his recent institutional record, convince the Court that Jordan has not reformed his behavior and remains the wily, manipulative person who stood before the Court at sentencing on August 30, 2016. In short, upon consideration of the § 3553(a) sentencing factors, the

---

[3] Jordan's projected release date is March 2, 2022. It has come to the Court's attention, however, that the BOP is considering Jordan for release to home confinement because it had recently asked the United States Probation Office to investigate Jordan's anticipated place of residence. The Government has submitted the BOP's Summary Reentry Plan, which explains that Jordan is ineligible for placement in a Residential Reentry Center ("RRC") because of his ongoing dialysis treatments. (See Gov't Supp. to Resp. in Opp'n to Mot. for Compassionate Release, Ex. D, at 3.) Accordingly, the BOP is recommending home confinement in lieu of RRC placement, which usually takes place about six months prior to release.

Court will exercise its discretion to **DENY** Defendant Jerry Lee Jordan's motion for compassionate release (doc. 112).

**ORDER ENTERED** at Augusta, Georgia, this 26th day of January, 2021.

*/s/ J. Randal Hall*
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA